**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>DOUGLAS WILLIS BOUCHEY,<br><br>    Defendant. | No. 07-CR-1023-LRR<br><br>**ORDER** |

_____

## *I. INTRODUCTION*

The matter before the court is Defendant Douglas Willis Bouchey's Motion to Dismiss Indictment Due to Pre-Indictment Delay ("Motion") (docket no. 98).

## *II. RELEVANT PRIOR PROCEEDINGS*

On March 31, 2008, Defendant filed the Motion. On April 17, 2008, the government filed a Resistance.

On May 1 and 7, 2008, the court held an evidentiary hearing on the Motion. Assistant United States Attorneys Stephanie M. Rose and Matthew J. Cole represented the government. Attorney Raphael M. Scheetz represented Defendant, who was personally present. The Motion is fully submitted and ready for decision.

## *III. ANALYSIS*

In the Motion, Defendant asks the court to dismiss all counts of the Indictment (docket no. 2) against him. Defendant alleges that the government waited approximately fifty months to seek an indictment against him. The grand jury handed down the Indictment in November of 2007; the Indictment alleges Defendant committed a host of crimes relating to an online pharmacy in August and September of 2003. Defendant contends that such delay violates the Due Process Clause of the United States Constitution. Defendant claims he suffered prejudice when one of his witnesses, Mr. Jack Huzl, died

and the memory of another witness, Ms. Jackie Devine, faded.

"The Fifth Amendment's due process clause prohibits unreasonable pre-indictment delay." *United States v. Sprouts*, 282 F.3d 1037, 1041 (8th Cir. 2002) (citing *United States v. Sturdy*, 207 F.3d 448, 451-52 (8th Cir. 2000)).

> [D]efendants claiming a due process violation for pre-indictment delay must carry the burden of proof on two separate elements. The defendant must establish that: (1) the delay resulted in actual and substantial prejudice to the presentation of his defense; and (2) the government intentionally delayed his indictment either to gain a tactical advantage or to harass him. [*Sturdy,* 207 F.3d at 452]; *see also United States v. Grap,* 368 F.3d 824, 829 (8th Cir. 2004); *Sprouts,* 282 F.3d at 1041.

*United States v. Jackson*, 446 F.3d 847, 849-50 (8th Cir. 2006) (footnote omitted).

These two elements pose significant hurdles to defendants and are not easily proved. In the seminal case on the subject, the Supreme Court observed:

> [T]he Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment. Judges are not free, in defining "due process," to impose on law enforcement officials our "personal and private notions" of fairness and to "disregard the limits that bind judges in their judicial function." Our task is more circumscribed. We are to determine only whether the action complained of—here, compelling respondent to stand trial after the Government delayed indictment to investigate further—violates those "fundamental conceptions of justice which lie at the base of our civil and political institutions," and which define "the community's sense of fair play and decency. . . ."

*United States v. Lovasco*, 431 U.S. 783, 790 (1977) (citations omitted). Often delay in prosecution results from legitimate investigative purposes. With respect to such investigative delay, the Supreme Court stated:

> In our view, investigative delay is fundamentally unlike delay

2

> undertaken by the Government solely "to gain tactical advantage over the accused," *United States v. Marion*, 404 U.S. at 324, precisely because investigative delay is not so one-sided. Rather than deviating from elementary standards of "fair play and decency," a prosecutor abides by them if he refuses to seek indictment until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt. Penalizing prosecutors who defer action for these reasons would subordinate the goal of "orderly expedition" to that of "mere speed," *Smith v. United States*, 360 U.S. 1, 10 (1959). This the Due Process Clause does not require. We therefore hold that to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time.

*Lovasco*, 431 U.S. at 795-96.

Defendant has not shown actual and substantial prejudice. There is no evidence that Ms. Devine's memory faded as a result of the delay in the Indictment. While it is true that Mr. Huzl was in poor health for many years and died shortly after the Indictment, Defendant has not proved that Mr. Huzl's absence at trial would substantially prejudice him. Mr. Huzl was a co-defendant, and his interests did not necessarily coincide with Defendant's.

Even if the court were to assume that the fifty-month delay actually and substantially prejudiced Defendant, he has not shown that the government intentionally delayed his indictment either to gain a tactical advantage or to harass him. There is absolutely no evidence in the record that the government had such an illicit purpose. Indeed, Defendant does not even bother to make such an allegation in the Motion; he simply states that the government's reasons for delay are "unclear." Motion at 9. This is an extremely complicated case, and the court finds that any delay in indictment resulted from legitimate

3

investigative purposes and legitimate investigative purposes only.[1]  Accordingly, the court shall deny the Motion.

## IV.  DISPOSITION

The Motion (docket no. 98) is **DENIED**.  The period between the filing of the Motion and this Order is excluded from calculation under the Speedy Trial Act.  18 U.S.C. § 3161(h)(1)(F) (excluding delay resulting from the filing of any pretrial motion through the prompt disposition of the motion); 18 U.S.C. § 3161(h)(1)(J) (excluding "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court").

**IT IS SO ORDERED.**

**DATED** this 27th day of May, 2008.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

---

[1] It is undisputed that, in May of 2004, the government conducted thirty five searches, which resulted in the largest digital evidence seizure in the history of the Drug Enforcement Administration ("DEA").  It took the DEA over three years—from approximately May of 2004 to October of 2007—to analyze and copy between one and two *terabytes* of information regarding the alleged conspiracies at issue in this case.  At the time of Indictment, the discovery file contained more than 460,000 documents; some of the documents consist of more than 1,000 pages.

4